So Ordered.

Signed this 11 day of July, 2025.



_____

Wendy A. Kinsella

United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:                                                      Case No. 25-30250
                                                            Chapter 13
Cuwanda L. Williams-Bell,

                     Debtor.

_____

**Memorandum-Decision and Order on Demetrious K. Bell's Objections to Confirmation of
Debtor's  Chapter 13 Plan**

Before the Court are objections by Demetrious K. Bell ("Creditor" or "Mr. Bell") to

confirmation of the chapter 13 plan (the "Plan" at Doc. 2) proposed by Cuwanda L. Williams-Bell

("Debtor").  Creditor's *Objection to Confirmation of Plan* (the "Plan Objection" at Doc. 14) and

*Supplemental Objection to Confirmation of Plan* (the "Supplemental Objection" at Doc. 38)

(collectively, the "Confirmation Objections") assert, *inter alia*, Debtor did not file this Chapter 13

case and the Plan in good faith as required by 11 U.S.C. §§ 1325(a)(3) and (a)(7). [1]  Additionally,

Creditor, who proceeded *pro se*, argues the Plan violates section 1325(a)(4) because the unsecured

creditors will not receive at least as much as they would in a chapter 7 liquidation, and it is not

feasible as required by section 1325(a)(6), so confirmation should be denied.  As required by

Federal Rule of Civil Procedure 52 made applicable to this bankruptcy proceeding by Federal Rule

of Bankruptcy Procedure 7052, the Court renders the following findings of fact and conclusions

of law. For the reasons detailed below, the Court overrules the Confirmation Objections, confirms

the Plan and directs the Trustee to submit an Order confirming the Plan.[2]

### Jurisdiction

The Court has core jurisdiction over the parties and the subject matter of this contested

matter in accordance with 28 U.S.C. §§ 1334(b) and 157(b)(2)(A), (b)(2)(L) and (b)(2)(O).  Venue

is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

I.      The Bankruptcy Filing

The facts in this case are largely undisputed. Debtor and Creditor (the "Parties") were

married until divorced by a Judgment of Divorce dated October 30, 2024. *See* Creditor's Exhibit

7, p. 2  (the "Divorce Judgment").[3]  At the time of the divorce, Debtor owned her residence on

---

[1] Unless otherwise stated, all statutory references are to sections of the United States Bankruptcy Code (the "Code"),
11 U.S.C. § 101 et seq., and will hereinafter be referred to as "section [section number]."

[2] The record consist of: (i) the Petition (the "Petition" at Doc. 1); (ii) the Chapter 13 Plan (the "Plan" at Doc. 2); (iii)
the *Objection to Confirmation of Plan* (the "Plan Objection" at Doc. 14); (iv) the *Response To Creditor's Objection
To Plan Confirmation* (the "Response" at Doc. 16); (v) the Amended Schedule A/B (the "Amended Schedules" at
Doc. 15); (vi) the Amended Schedule C (the "Amended Schedule C" at Doc. 18); (vii) the Letter dated May 30, 2025
filed by Debtor (the "Letter" at Doc. 26); (viii) the *Supplemental Objection to Confirmation of Plan* (the
"Supplemental Objection" at Doc. 38); (ix) Debtor's *List of Witnesses and Exhibits* ("Debtor's Exhibit and Witness
List" at Doc. 39); (x) Mr. Bell's *List of Witnesses and Exhibits* ("Creditor's Exhibit and Witness List" at Doc. 41);
and (xi) the exhibits admitted at the evidentiary hearing on June 27, 2025 (each individually referred to as "Creditor's
Exhibit [exhibit number]").

[3] Page 2 of Creditor's Exhibit 7 appears to be an excerpt of the Parties' Divorce Judgment issued in *Cuwanda Williams
v. Demetrious Bell*, Index No. 001529/2022 (the "Matrimonial Case"), pending in the Supreme Court of New York
State, Onondaga County (the "Matrimonial Court").

Fayette Circle, Fayetteville, New York (the "Real Property").  An order entered in the Matrimonial

Case directed Debtor to pay Creditor for his share of equity in the Real Property in the amount of

$23,324.30 (the "Equitable Distribution Award") by April 1, 2025.  *See* Creditor's Exhibit 7, p. 1

(the "Distribution Order").[4]  The Distribution Order provided that if the Equitable Distribution

Award remained unpaid by April 1, 2025, the Real Property was to be sold by a realtor mutually

agreed upon by the Parties, or pursuant to further order of the Matrimonial Court.  The Equitable

Distribution Award was not paid by April 1, 2025.

Debtor filed her Petition on April 3, 2025 (the "Petition Date").  Creditor was listed on

Schedule E/F with a general unsecured debt in the amount of $23,234.30.  *See* Petition, at 21.

Creditor timely filed an unsecured proof of claim in the amount of $29,466.66 (the "Claim")  for

his "[s]hare of equity of marital residence as specified in Divorce Decree . . . ."  *See* Proof of Claim

5-1.[5]

II.      Creditor's Confirmation Objections

After Debtor filed her Plan, Creditor filed the Plan Objection, claiming Debtor had failed

to list certain assets, and lacked good faith in filing the case and the Plan.  *See* Plan Objection.

Debtor filed the Response, disputing Creditor's claims and thereafter amended her schedules to

include certain undisclosed assets and claimed them as exempt.   *See* Response; Amended

Schedules and Amended Schedule C.  In response to the Amended Schedules, Creditor filed the

Supplemental Objection reiterating that confirmation of the Plan should be denied on lack of good

faith grounds including Debtor's attempt to discharge the debt due to Creditor.  *See* Supplemental

---

[4] Page 1 of Creditor's Exhibit 7 appears to be an excerpt of the Distribution Order issued in the Matrimonial Case.
[5] Debtor filed a *Motion to Disallow Claim of Respondent* (the "Claim Objection" at Doc. 23), objecting to the Claim
due to a failure to provide calculations of interest. In response, Creditor filed an *Amended Proof of Claim* (Doc. 5-2).
As a result of the *Amended Proof of Claim*, Debtor withdrew the Claim Objection.

Objection.  An initial hearing was held, at which time an evidentiary hearing was scheduled for June 27, 2025 (the "Confirmation Hearing").

III.    Debtor's Mortgage Modification

Prior to the Confirmation Hearing, Debtor sought approval of a loan modification to address mortgage arrears that granted the Secretary of Housing and Urban Development a subordinate Mortgage on the Real Property, together with a Promissory Note in the amount of $17,525.31, which would be payable, without interest, on December 1, 2048. *See Motion For An Order Approving Mortgage Loan Modification* (the "Loan Modification Motion" at Doc. 30).[6] The Chapter 13 Trustee did not object to the Court's approval of the Loan Modification Motion as it would allow an increase in the dividend to unsecured creditors from 2% to approximately 33%. Creditor objected to the Loan Modification Motion, arguing, *inter alia,* that the Loan Modification Motion was filed in bad faith, and the relief sought was in violation of the Distribution Order that directed Debtor not to further encumber the Real Property with additional debt.  *See Creditor's Objection to Debtor's Motion For An Order Approving Mortgage Loan Modification* (Doc. 37). In overruling Creditor's Objection, the Court determined the loan modification would not result in new debt.  Instead, the modification extended the repayment of already existing debt to December 1, 2048, importantly, *without interest. See Order Approving Loan Modification And Authorizing Parties To Enter Into A Loan Modification Agreement* (the "Loan Modification Order" at Doc. 42).

---

[6] The Loan Modification Motion was heard on shortened notice of fifteen (15) days because the offer was required to be accepted prior to the next available hearing date.

IV.     Confirmation Hearing

The Confirmation Hearing was attended by Debtor, Debtor's counsel, Creditor and counsel for the Chapter 13 Trustee. Creditor called Debtor as his first witness.[7] Creditor questioned Debtor on a variety of areas including assets that had been omitted from Debtor's Schedules, her income and her mortgage debt.  Specifically, Creditor inquired as to why Debtor failed to disclose certain assets including two televisions, one 2018 snow blower, an Obama coin collection, a Corso family dog, and profits Debtor had received from a self-published book that amounted to around $8.00. Debtor credibly testified that she believed the property she omitted from the schedules either was not owned by her or had little or no value and thus did not need to be disclosed. As to the specific property, Debtor stated that (1) the televisions were several years old and had minimal value; (2) the snow blower had not been used for several years, may not work and had little value;(3) the Obama coin collection belonged to her children;[8] (4) the Corso family dog was not intended to be bred and/or sold and had no value; and (5) the profits from the self-published book were received after her bankruptcy petition, and were also minimal.  When Creditor submitted Creditor's Exhibit 12, a screenshot reflecting that at least one book had been sold prior to the bankruptcy petition, Debtor testified only a few books had been sold and the net profit from the sale of each book was negligible.

Creditor also questioned Debtor as to the income she had listed on her Petition on Schedule I and the Current Monthly Income contained on Form 122C-1.  Creditor argued that Debtor had

---

[7] At the initial hearing, Creditor requested an expedited evidentiary hearing without discovery.  At the evidentiary hearing, Creditor listed two Wells Fargo employees as witnesses, as well as Debtor's counsel. However, Creditor did not issue subpoenas to the Wells Fargo employees so they did not appear; accordingly, the Court did not require their appearance as required under Federal Rule of Civil Procedure 45.  Further, the Court ruled that as Creditor's intended questioning of Debtor's counsel would generally fall under attorney-client privilege and be an inefficient use of time, such examination was disallowed.  Fed. R. Evid. 403 and 502.

[8] Creditor at one point during the Confirmation Hearing stated that the Obama coin collection in fact belonged to him and also asserted that Debtor had accused Creditor of stealing the Obama coin collection. The Court does not opine on these statements.

fraudulently listed the incorrect income during certain months, and that certain months should be lower than that listed, due to an injury Debtor had suffered that would have led to her being unable to work during part of December 2024. Debtor credibly testified that she, with her counsel, had taken the income she received in total, averaged the income, and listed that as her monthly income. Debtor also stated she listed child support income that was supposed to be paid by Creditor, but which she alleged was not consistently received during the listed months, and was applied to the oldest month for which payment was due.

Debtor testified about the mortgage payments which are current after the loan modification, explained the impact the modification had on her finances, and the reason the modification was required. Debtor had experienced a job loss and while Debtor was granted a forbearance, the arrears were not forgiven. Debtor also had difficulty making mortgage payments in November and December 2024 when she was in two separate motor vehicle accidents resulting in additional mortgage arrears. Debtor applied for a loan modification before the Petition Date, which was approved by the mortgage lender post-petition and thus required approval by this Court. Debtor testified that the loan modification resulted in an increased repayment on her unsecured debt to approximately 33%.

Throughout the Confirmation Hearing, Creditor inquired of Debtor as to the timing of the bankruptcy filing, arguing that she had done so in order to avoid having to pay the Equitable Distribution Award through the sale of the Real Property. Debtor did not fully respond to such line of questioning, but stated that their children's enrollment in the Fayetteville-Manlius school district was of utmost importance to her and that she did not wish to sell the Real Property and move from the area. She explained that she would not be able to afford another house in the school district and quite possibly would be rendered homeless and required to live in a shelter if the Real

Property was sold because she would not be approved for another mortgage due to a decline in her credit score and sporadic income.  Creditor appeared to disagree with these statements.

Debtor's counsel then examined Debtor.  Debtor stated that she had filed in good faith, that she had answered truthfully, and that she held no other property.  Debtor explained that the child support paid by Creditor was sporadic and that Creditor was not current with payments.  She further testified that she obtains food and household supplies from the local food pantry weekly which is necessary to provide sufficient food for the children given her current budget.  This practice was more frequent in prior months due to the motor vehicle accidents that led to Debtor being unable to work for several weeks.

The Chapter 13 Trustee questioned Debtor to clarify her understanding of the term "asset" which Debtor explained she thought meant property that had value and had learned this definition through an internet search.

At the close of the Confirmation Hearing, the Court took the matter under advisement.

**<u>Discussion</u>**

I.       Confirmation Requirements of Section 1325(a)

This Court previously observed "Section 1325(a) sets out nine requirements that must be satisfied to confirm a chapter 13 plan.  When an objection is filed, "the burden of proof at confirmation of a chapter 13 plan is a shifting one." *In re Powers,* 554 B.R. 41, 55 (Bankr. N.D.N.Y. 2016) (citing *McKinney v. McKinney (In re McKinney),* 507 B.R. 534, 539 (Bankr. W.D. Pa. 2014)).  The party objecting to the plan bears the initial burden of presenting some evidence to support its position and, if satisfied, the burden shifts to Debtors to prove by a preponderance of the evidence that the requirements of section 1325 have been met." *In re Sorbello*, 2023 Bankr.

LEXIS 1793, at *6 (Bankr. N.D.N.Y. July 19, 2023) (citing *Powers*, 554 B.R. at 55; *In re McGuire*, Case No. 20-61183, 2022 Bankr LEXIS 1778, at *5–6 (Bankr. N.D.N.Y. June 24, 2022)).

Creditor asserts confirmation must be denied because Debtor did not propose the Plan in good faith and did not file the Petition in good faith as mandated by sections 1325(a)(3) and (a)(7). Creditor argues that Debtor's failure to initially disclose certain assets in her schedules, as well as the timing of Debtor's Petition, evince a lack of good faith. Additionally, Creditor contends that the Debtor will not be able to make all payments under the Plan and comply with the Plan as required under section 1325(a)(6) of the Code. Further, Creditor asserts that the Plan fails to meet the best interest of creditor's test under section 1325(a)(4). The Court shall address each of these arguments in turn.

At the outset, the Court finds Creditor has met his initial burden and presented evidence sufficient to support the Confirmation Objections. The burden therefore shifts to Debtor to prove by a preponderance of evidence that the requirements of sections 1325(a)(3), (a)(4), (a)(6) and (a)(7) have been satisfied.

II.      11 U.S.C. § 1325(a)(3) – Good Faith in Proposing the Plan

Section 1325(a)(3) states "the court shall confirm a plan if the plan has been proposed in good faith and not by any means forbidden by law." The Code does not define the term "good faith," but "courts have held that '[a] debtor acts in 'good faith' when [he or] she demonstrates a 'sound and proper motive for seeking the protection of Chapter 13.'" *Powers*, 554 B.R. at 55–56 (quoting *Henri v. Wheeler* (*In re Wheeler*), 511 B.R. 240, 250 (Bankr. N.D.N.Y. 2014 (citing *In re Johnson*, 428 B.R. 22, 24 (Bankr. W.D.N.Y. 2010)).

Black's Law Dictionary defines good faith as: "[a] state of mind consisting in (1) honesty in belief or purpose . . . or (4) absence of intent to defraud or to seek unconscionable advantage."

8

Black's Law Dictionary 836 (11th ed. 2019).  A good faith analysis is a fact-specific determination based on the totality of the circumstances.  In essence, a court must assess whether the filing was fundamentally fair and complies with the Bankruptcy Code's rehabilitative purpose of affording a fresh start to an honest but unfortunate debtor.  *Powers*, 554 B.R. at 55–56 (applying totality of circumstances tests for review under section 1325(a)(3) and analysis of motivation and purpose for review under section 1325(a)(7)); *see In re Roby*, 649 B.R. 583, 594 (Bankr. M.D. Ala. 2023) (holding that debtors with a greedy and unworthy purpose or perpetrating a malevolent scheme are not proceeding in good faith).

Denying a debtor the relief available under the Bankruptcy Code based on a lack of good faith is a narrow doctrine.  *In re Ames*, Case No. 21-12125, 2022 Bankr. LEXIS 1715, at *21 (Bankr. E.D. Pa. June. 17, 2022).  As Judge Eric L. Frank stated,  "[w]hether at the initial filing stage or at confirmation, a finding of a lack of good faith serves as a general bar to the relief the Bankruptcy Code offers. In these contexts, courts generally have agreed that the good faith doctrine is a narrow one."  *Id.* at 22 (quotations omitted).  As a result, "[s]everal courts have recognized that a robust application of the good faith doctrine creates a risk that the court's analysis will lapse into an inquiry, that may clothe subjective moral judgments with the force of law.  Further, a broad application of the good faith requirement also would create an undue risk of judicial usurpation of the legislative power to determine the scope of and eligibility for [bankruptcy] relief.  Consequently, denial of bankruptcy relief based on a lack of good faith should be confined carefully and is generally utilized only in egregious cases."  *Id.*  (quotations and citations omitted).  With these principles in mind, the Court considers the good faith objections to confirmation in this case.

The Second Circuit provides guidance for the Court's review of Debtor's intentions in proposing the Plan under section 1325(a)(3): "[t]o ascertain whether a plan was proposed in good faith, a bankruptcy court must determine 'whether the debtor has misrepresented facts in [her] plan, unfairly manipulated the Bankruptcy Code, or otherwise proposed [her] Chapter 13 plan in an inequitable manner.'" *Johnson v. Vanguard Holding Corp.* (*In re Johnson*), 708 F.2d 865, 868 (2d Cir. 1983) (quoting *In re Goeb,* 675 F.2d 1386, 1389–91 (9th Cir. 1982)); *see also In re Tcherneva*, 638 B.R. 676, 687 (Bankr. E.D.N.Y. 2022).  This Court and other Bankruptcy courts in this District have adopted additional factors to consider in this analysis, including:

> (1) the amount of the proposed payments and the amount of the debtor's surplus;
> (2) the debtor's employment history, ability to earn, and likelihood of future increases in income;
> (3) the duration of the plan;
> (4) the accuracy of the plan's statement of the debts, expenses and percentage repayment of unsecured debt, and whether any inaccuracies are an attempt to mislead the court;
> (5) the extent of preferential treatment of creditors;
> (6) the extent to which secured claims are modified;
> (7) the type of debt sought to be discharged, and whether any such debt is potentially non-dischargeable in Chapter 7;
> (8) the existence of special circumstances such as inordinate medical expenses;
> (9) the frequency with which the debtor has sought relief under the Code;
> (10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and
> (11) the burden which the plan's administration would place upon the Chapter 13 trustee.

*Sorbello*, 2023 Bankr. LEXIS 1793, at *9–10 (quoting *Powers*, 554 B.R. at 55–56 (quoting *In re Corino*, 191 B.R. 283, 288 (Bankr. N.D.N.Y. 1995))).  This Court concluded no particular factor is determinative.  *Id*. at *10 (citing *In re Wrobel*, 533 B.R. 863, 868 (Bankr. W.D.N.Y. 2015)).  "[T]he essence of the totality of circumstances test requires a determination of whether Debtor's conduct evinces a continuum of bad faith as it relates to the Chapter 13 Plan's proposal."  *Id.* (quoting *Powers*, 554 B.R. at 56. (quotations omitted)).

Creditor alleges the circumstances in this case and several of the *Powers* factors support a finding that Debtor has not proposed the Plan in good faith.  He asserts Debtor failed to list assets in her bankruptcy petition, explain income discrepancies, and filed the case in order to avoid paying the Equitable Distribution Award.  Creditor argues the totality of the circumstances demonstrate Debtor did not propose the Plan in good faith as required by section 1325(a)(3) and confirmation should be denied.

During questioning, Creditor asked Debtor if she had written evidence to support certain statements concerning her belief as to ownership of the assets, to clarify her income and to support the favorable outcome of the loan modification.  While written details of these transactions were not submitted into evidence, the Court may determine that oral testimony alone is sufficient.  *See Sanders v. Monsanto Co.*, 574 F.2d 198, 200 (5th Cir. 1978) (stating in *dicta* "[h]istorical experience has taught us that testimonial evidence has the highest reliability because the credibility of the witness can be evaluated, and the factual issues narrowed by cross-examination").  Here, Debtor provided direct evidence of personal knowledge regarding the subject of Creditor's questions and the Court finds Debtor was credible.  *Sylvester v. SOS Children's Vills. III, Inc.*, 453 F.3d 900, 903 (7th Cir. 2006) ("Direct testimony by a witness about a matter within his personal knowledge does not require drawing an inference from the evidence . . . to the proposition that it is offered to establish").

Debtor explained how the Income on Schedule I was calculated as Schedule I reflects a different time frame for calculating Debtor's "net income" than the Income on Form 122-C, thus clarifying the discrepancy that was the subject of Creditor's inquiry.  She noted the objections to the accuracy of Debtor's Petition and schedules have been addressed with the Amended Schedules and explained the undisclosed assets were inadvertently omitted because they had *de minimis*

value.  She stated she did not attempt to mislead the Court, and filed this case in part to address Creditor's claim deriving from the Equitable Distribution Award.  Debtor submits these factors demonstrate the Plan was proposed in good faith.

"[The Court] considers a debtor's duty to file true and complete schedules to be of immense significance when it evaluates whether a debtor has acted in bad faith." *In re Gutierrez*, 528 B.R. 1, 23 (Bankr. D. Vt. 2014). However, a "debtor also has an absolute right to amend his or her schedules" and when amending a schedule, a Court determines whether a "reasonable person would have cause to question whether the original schedules were merely prepared sloppily or were calculated to obfuscate the truth." *In re Ladieu*, No. 14-10551, 2015 WL 3503941, at *10 (Bankr. D. Vt. June 1, 2015). Despite Creditor's argument that Debtor was attempting to hide certain assets, the Court finds Debtor's testimony credible and the omission of certain assets was accidental, inadvertent, or based on an incorrect conclusion that an item with nominal value was not an asset required to be included.  When finding bad faith, prior Courts have highlighted the substantial nature of hidden assets. *See e.g., In re Burnett*, No. 10-31788, 2011 WL 204907, at *4 (Bankr. N.D.N.Y. Jan. 21, 2011) (collecting cases on "sizable" hidden assets). The Court notes Debtor's Amended Schedules adding previously undisclosed assets valued them at $1,500.00, which is not substantial or representative of a lack of good faith.

The Court recognizes several *Powers* factors weigh in favor of Creditor.  First, Creditor's debt will be potentially be discharged upon completion of the Amended Plan payments, while it would not be discharged in a chapter 7 case.[9]  Nevertheless, "Congress has made it clear that some debts, although nondischargeable in Chapter 7 may be discharged under the more liberal rules of Chapter 13," and "[w]e are not free to second-guess Congress's policy choice in this regard."  *In*

---

[9] Debts incurred "in the course of a divorce or separation or in connection with a separation agreement or divorce decree or other order of a court of record" are discharged.  *See* 11 U.S.C. §§ 523(a)(15) and 1328(a).

*re Smith*, 286 F.3d 461, 467 (7th Cir. 2002). "[A]lthough the nature of the underlying debt, not dischargeable in Chapter 7 weighs against a finding of good faith, this factor alone cannot defeat confirmation of [the debtor's] plan." *Id*. at 468. Therefore, while this policy may result in inequitable treatment in the eyes of Creditor, the Court must abide by Congress's language and intention.

Debtor's filing of the Petition in order to avoid the Distribution Order also supports Creditor's position. However, this timing does not conclusively establish a lack of good faith in proposing the Plan. "It is, after all, permissible to use the Bankruptcy Code to try for a fresh start when subject to a real and substantial threat of economic harm." *In re Pappas*, Case No. 18-20179, 2019 Bankr. LEXIS 2917, at *23 (Bankr. D. Me. Sept. 19, 2019) (finding the proximity between the commencement of a case and a contempt order "is not determinative" of good faith) (quotation omitted). To find that filing a bankruptcy on the eve of a court enforcement action in anticipation of an adverse outcome equates to a lack of good faith would have consequences that reach far beyond this case and will not be adopted by this Court.

Applying the Second Circuit precedent and the *Powers* factors to the case at hand, the Court finds that the Plan was proposed in good faith. The following facts were pertinent in reaching that conclusion: (1) the Plan proposes payments of $675.00 for 36-months which originally contemplated a payment of over $17,000.00 to Wells Fargo as mortgage arrears, and a 2% dividend to unsecured creditors; (2) upon approval of the loan modification, the proposed dividend to unsecured creditors increased to approximately 33%; and (3) Debtor is working as a self-employed Uber and Lyft driver, and also delivering food in order to meet expenses.

Further, there have not been claims of any preferential treatment of creditors, nor does Debtor seek any further modification of secured claims. This is the only case filed by Debtor and

13

the Court does not perceive any additional burden will be placed on the Chapter 13 Trustee.  In reviewing the totality of the circumstances, the Court believes Debtor's motivation and sincerity in seeking Chapter 13 relief is consistent with the purpose and goals of the Bankruptcy Code.

In light of the above, the Court finds Debtor to be sincere in proposing the Plan. She did not unfairly manipulate the Bankruptcy Code or otherwise propose that plan in an inequitable manner.  She has been making her proposed plan payments to the Trustee.  These factors demonstrate Debtor's good faith in proposing the Plan as required under section 1325(a)(3).  *In re Johnson*, 428 B.R. 22, 24 (Bankr. W.D.N.Y. 2010).

III.    Section 1325(a)(7) – Good Faith Filing of the Petition

In addition to requiring the Plan be proposed in good faith, section 1325(a)(7) requires that Debtor's Petition be filed in good faith.  Creditor has asked the Court to consider "this filing an act of bad faith," which the Court interprets as an objection to confirmation under that section. *See* Plan Objection, p. 2.  As with the analysis of whether the Plan is proposed in good faith, this assessment is made on a case-by-case basis based on the totality of the circumstances.  *In re Roby*, 649 B.R. 583, 595 (Bankr. M.D. Ala. 2023) (citing *Gen. Lending Corp. v. Cancio*, 578 F. App'x 832, 834–35 (11th Cir. 2014); *In re Brown*, 742 F.3d 1309, 1317 (11th Cir. 2014)); *In re Powers*, 554 B.R. 41, 58 (Bankr. N.D.N.Y. 2016).  The "essential question" is "whether the petition was filed for a greedy and unworthy purpose as opposed to a rehabilitative purpose." *Sorbello*, 2023 Bankr. LEXIS 1793, at *19 (citing *Powers*, 554 B.R. at 59 (quotations omitted)).  "This inquiry examines factors such as: 'the motivation of the debtor and his or her sincerity in seeking Chapter 13 relief, the debtor's degree of effort, the frequency with which the debtor has sought relief under the Code, and the circumstances under which the debtor has contracted his or her debts and has demonstrated good faith in dealing with creditors.'" *Id.*

14

Several of the section 1325(a)(3) factors and cases discussed above overlap and influence this analysis.  As in many chapter 13 cases involving a divorced debtor, the largest debt was unpaid court-ordered equitable distribution.  Considering Congress's express intention to permit this type of debt to be discharged in chapter 13 cases, the Court finds the filing of the Petition was not for a greedy or unworthy purpose.  *See* 11 U.S.C. §§ 1328(a) and 523(a)(15).  Debtor was in default on her mortgage and at the outset had expected to pay those arrears through the Plan to maintain her home for herself and her children.  There are several other unsecured debts besides the Creditor's claim that are being addressed in this case.  This is Debtor's first bankruptcy case, and she is contributing at least $24,300.00 under the Plan.  After the Petition Date, she entered into the loan modification to defer the mortgage arrears without accruing interest which results in an increased distribution to unsecured creditors of approximately 33%. *See* Loan Modification Order.  As noted, the Court finds the Plan was proposed for a rehabilitative purpose and Debtor has demonstrated an ability to complete it.

The remaining issues are (i) the circumstances under which Debtor has contracted her debts; (ii) if she has demonstrated good faith in dealing with creditors, in particular Mr. Bell; and (iii) the failure to list certain assets on her Schedules.  Taking the circumstances of the incurred debt and Debtor's interaction with her creditors both support and refute a finding of lack of good faith.  Notwithstanding that Debtor was aware of the terms of the Distribution Order that directed payment of the Equitable Distribution Award by April 1, 2025, Debtor did not comply with the order and sought an extension of the April 1, 2025 the deadline, which Creditor opposed.  The extension request was denied in the Matrimonial Case. The failure to pay and to list the Real Property for sale weigh in favor of Creditor's position and support his arguments that good faith

15

is lacking.  Similarly, as noted above, Debtor's omission of certain assets supports a finding that the case was not filed in good faith.

On the other hand, Debtor testified that she filed for bankruptcy at least in part due to the arrearage she had accrued on the Wells Fargo mortgage on the Real Property and because she was unable to meet ongoing expenses for food and household supplies.  Additionally, Debtor's intent to prevent the sale of the Real Property was driven by a desire to keep her children in their current school district.  Finally, as noted above, Debtor credibly testified that the omission of assets was not intentional and was based on a misunderstanding of either the ownership of the item or the requirement for each specific item to be identified on her schedules.  These statements weigh in favor of Debtor and a finding that the case was filed in good faith.

It is undisputed that Debtor failed to pay Creditor pursuant to the Distribution Order.  Debtor admitted not every asset was listed but promptly amended her schedules to include the assets, which had limited value and were exempt.  The Court finds she testified credibly and was not attempting to mislead the Court.  She has not engaged in other conduct that would support a finding of lack of good faith in filing this case.    Recognizing that denial of bankruptcy relief based on a lack of good faith should be confined carefully and utilized only in egregious cases, the Court believes her lack of disclosure of de minimis assets was an error, and failing to pay Creditor the Equitable Distribution Award does not rise to the level of egregiousness that warrants denial of bankruptcy relief.

In this case, the Court finds Debtor is dealing fairly and in good faith with all her debts by making payments under the Plan and providing her creditors with some recovery.  Debtor has presented a sound and proper purpose for seeking bankruptcy protection.  The bankruptcy filing and proceedings since that time have shown Debtor's "honesty in belief or purpose . . ." and

16

"absence of intent to defraud or to seek unconscionable advantage." The Court therefore concludes Debtor has demonstrated by a preponderance of the evidence that she filed the Petition in good faith as required by section 1325(a)(7).

IV.     Section 1325 (a)(4) – Best Interest of Creditors Test

"Section 1325(a)(4) sets out the 'best interest of creditors' test that requires, as of the effective date of the plan, the value 'of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date.' 11 U.S.C. § 1325(a)(4). This provision 'allows a debtor to retain property that would otherwise have to be surrendered in a chapter 7 proceeding.'" *In re Olson*, 2023 Bankr LEXIS 1416, at *12–13 (Bankr. N.D.N.Y. May 31, 2023) (citing *McGuire*, 2022 Bankr. LEXIS 1778, at *14; *In re Moglia*, 2014 Bankr. LEXIS 5197, at *11 (Bankr. D. Or. Dec. 30, 2014)).

The Court is required "to examine the value of nonexempt property of the estate that would be available to a chapter 7 trustee for distribution to the unsecured creditors," and if, in the hypothetical chapter 7 distribution, unsecured creditors would be paid more than in the plan before the Court, then the Court must deny confirmation of the plan. *In re Williams*, 354 B.R. 604, 609 (Bankr. N.D.N.Y. 2006).

Upon a review of Debtor's Petition, the Amended Schedules and Amended Schedule C, there are no non-exempt assets available for distribution. Debtor's creditors would be paid less in a hypothetical Chapter 7 case than what they are receiving here. Accordingly, Debtor has satisfied the best interest of creditors test to support confirmation of the Plan.

V.      Section 1325(a)(6) – Feasibility

Section 1325(a)(6) requires Debtor to demonstrate that she will "be able to make all payments under the plan and comply with the Plan," *In re Tcherneva*, 638 B.R. 676, 687 (Bankr. E.D.N.Y. 2022) and is "[b]y far the most important criterion for the confirmation of a chapter 13 plan." *In re Jensen*, 425 B.R. 105, 109 (Bankr. S.D.N.Y. 2010).  Courts have held that "a debtor's plan must have a reasonable likelihood of success, i.e., that it is likely that the debtor will have the necessary resources to make all payments as directed by the plan." *In re Merhi*, 518 B.R. 705, 710 (Bankr. E.D.N.Y. 2014) (quoting *In re Fantasia*, 211 B.R. 420, 423 (1st Cir. BAP 1997)).  "A definite declaration as to the source and the amount of funds necessary to enable the debtor to make the plan payments is required."  *Jensen*, 425 B.R. at 110.  Generally, plans are denied if a debtor is unable to show where funds needed to fund the plan would derive from, or if said funds are merely speculative in nature. *Id.*

Here, Debtor has testified that she will fund the Plan through her income as an Uber driver, Lyft driver, and food delivery person.  She covers several household necessities with food pantry items and receives child support.  The Chapter 13 Trustee has also stated that, as of the Confirmation Hearing, Debtor is current with Plan payments.  Based on Debtor's Schedules, her credible testimony regarding her income, and the representation that she is current with her Plan payments, the Court determines Debtor's Plan is feasible within the meaning of section 1325(a)(6).

### Conclusion

In light of the foregoing, the Court overrules the Objections and confirms the Plan. The Court directs the Chapter 13 Trustee to submit a proposed Order Confirming Chapter 13 Plan within 30 days. The Clerk is directed to serve a copy of this Order on Mr. Bell by mail.

###